IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 30, 2013 Session

## CHRISTINE STEVENS EX REL. MARK STEVENS v. HICKMAN COMMUNITY HEALTH CARE SERVICES, INC. ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Circuit Court for Hickman County**
**No. 11CV41      Robbie T. Beal, Judge**

**No. M2012-00582-SC-S09-CV - Filed November 25, 2013**

More than sixty days before filing suit, the plaintiff gave written notice to the potential defendants of her healthcare liability claim against them. Tenn. Code Ann. § 29-26-121(a)(2)(E) (2012) requires that a plaintiff's pre-suit notice include a HIPAA compliant medical authorization that permits the healthcare provider receiving the notice to obtain complete medical records from every other provider that is being sent a notice. Contrary to the statute, the plaintiff provided a non-HIPAA compliant medical authorization that only permitted the release of medical records to plaintiff's counsel. After the plaintiff filed suit, the defendants moved to dismiss the complaint based on noncompliance with Tenn. Code Ann. § 29-26-121(a)(2)(E). The trial court denied the motion, ruling that plaintiff's noncompliance was excused by extraordinary cause. We hold that the plaintiff was required to substantially comply with Tenn. Code Ann. § 29-26-121(a)(2)(E) and failed to do so, and that her failure to comply is not excused by extraordinary cause. We dismiss the plaintiff's case without prejudice.

**Tenn. R. App. P. 11; Judgment of the Circuit Court Reversed; Case Dismissed**

SHARON G. LEE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK and WILLIAM C. KOCH, JR., JJ., joined. GARY R. WADE, C.J., and JANICE M. HOLDER, J., filed a separate concurring and dissenting opinion.

Joshua L. Hunter and Kara Beth Hunter, Nashville, Tennessee, for the appellant, Estate of Halford Whitaker, M.D.

C. Bennett Harrison, Jr. and Brian W. Holmes, Nashville, Tennessee, for the appellee, Hickman Community Health Care Services, Inc. d/b/a Hickman Community Hospital.

Richard D. Piliponis and Michael Reed Griffin, Nashville, Tennessee, for the appellee, Christine Stevens, Next of Kin of Mark Stevens, deceased, and on behalf of the wrongful death beneficiaries of Mark Stevens.

OPINION

I.

On May 27, 2010, Mark Stevens went to the Hickman Community Hospital emergency room complaining of fever, weakness, increased respiratory effort, rapid breathing, wheezing, sore throat, and a toothache. He was diagnosed with a peritonsillar abscess and fever, prescribed medication, and sent home. Two days later, Mr. Stevens returned to the emergency room and was treated by Dr. Halford Whitaker, who ordered a computed tomography scan of Mr. Stevens' head. The scan was normal, and Dr. Whitaker prescribed oxycodone and discharged Mr. Stevens. On June 1, 2010, Mr. Stevens went to the emergency room at Horizon Medical Center. He was admitted to the hospital and diagnosed with septic shock, respiratory failure, pneumonia, renal failure, and multi-system organ failure. His condition worsened, and he was transferred to Centennial Medical Center in Nashville, where he died on August 20, 2010.[1]

On April 11, 2011, pursuant to Tenn. Code Ann. § 29-26-121(a), counsel for Mr. Stevens' widow and next of kin ("Plaintiff") sent letters to Dr. Whitaker, Hickman Community Health Care Services, Inc., Hickman Community Hospital, and Elite Emergency Services, LLC, notifying them of a potential healthcare liability claim arising out of their care and treatment of Mr. Stevens. The notice letters requested Mr. Stevens' medical records from each provider, and included a medical authorization that permitted the release of Mr. Stevens' medical records to Plaintiff's counsel. The medical authorization failed to authorize each medical provider receiving the notice to obtain Mr. Stevens' records from each other. The medical authorization also failed to provide Mr. Stevens' name, date of birth, the individuals or organizations authorized to disclose medical records, and the type of information to be used or disclosed.

---

[1] Because we are reviewing the trial court's denial of a Tenn. R. Civ. P. 12.02(6) motion to dismiss, we must, for the purposes of this appeal, presume that the allegations of fact in the complaint are true. *See Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011); *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007)); *Trau-Med. of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 694-95 (Tenn. 2002).

On September 13, 2011, Plaintiff filed a healthcare liability suit against Hickman Community Health Care Services, Inc., doing business as Hickman Community Hospital; Elite Emergency Services, LLC; and Halford Whitaker, M.D.[2] ("Defendants") in the Circuit Court for Hickman County.[3] In her complaint, Plaintiff averred that she had complied with the pre-suit notice requirement of Tenn. Code Ann. § 29-26-121(a). Plaintiff also filed a certificate of good faith with her complaint pursuant to Tenn. Code Ann. § 29-26-122 (Supp. 2011).

In November of 2011, Defendants each moved to dismiss, arguing that they did not receive proper pre-suit notice as required by Tenn. Code Ann. § 29-26-121(a), specifically § 29-26-121(a)(2)(E), and that Plaintiff's noncompliance was not excused by extraordinary cause.

Following a hearing, the trial court denied Defendants' motions to dismiss, ruling that the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E) were neither preempted by HIPAA[4] nor in conflict with Tennessee law. The trial court also found that Plaintiff's failure to comply with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E) was excused by extraordinary cause. In reaching this finding, the trial court explained that it could not order Plaintiff's compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E) because Mr. Stevens was deceased, and noted further that Plaintiff had given Defendants notice of the suit and filed a certificate of good faith.

The trial court granted the Defendants' request for an interlocutory appeal, but the Court of Appeals denied the request. Dr. Whitaker filed an application for permission to appeal. We granted the application and review the following issues: whether Plaintiff is required to strictly or substantially comply with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E); whether Plaintiff complied with Tenn. Code Ann. § 29-26-121(a)(2)(E); if Plaintiff failed to comply, whether Plaintiff's failure is excused by extraordinary cause; and the consequences of Plaintiff's failure to comply if not excused.

---

[2] Dr. Whitaker died in November, 2011. The trial court granted the motion of Dr. Whitaker's personal representative, Sandra W. Stewart, to be substituted as a party. For convenience, we will refer to Dr. Whitaker as a defendant throughout this opinion.

[3] Plaintiff filed suit after the expiration of the one-year statute of limitations, relying on the 120-day extension provided by Tenn. Code Ann. § 29-26-121(c).

[4] HIPAA is an acronym for the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (codified throughout 18 U.S.C., 29 U.S.C., 42 U.S.C., and in 45 C.F.R. §§ 160 & 164) (2013).

To resolve these issues, we must interpret the meaning of various provisions of Tenn. Code Ann. § 29-26-121. Statutory interpretation is a question of law, which we review *de novo*. *Pratcher v. Methodist Healthcare Memphis Hospitals*, 407 S.W.3d 727, 734 (Tenn. 2013). When interpreting a statute, our role is to ascertain and effectuate the legislature's intent. *Sullivan ex rel. Hightower v. Edwards Oil Co.*, 141 S.W.3d 544, 547 (Tenn. 2004). We must not broaden or restrict a statute's intended meaning. *Garrison v. Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012) (quoting *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009)). We also presume that the legislature intended to give each word of the statute its full effect. *In re Estate of Trigg*, 368 S.W.3d 483, 490 (Tenn. 2012). When statutory language is unambiguous, we accord the language its plain meaning and ordinary usage. *Glassman, Edwards, Wyatt, Tuttle & Cox, P.C. v. Wade*, 404 S.W.3d 464, 467 (Tenn. 2013). Where the statutory language is ambiguous, however, we consider the overall statutory scheme, the legislative history, and other sources. *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012); *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008). The trial court's denial of Defendants' motions to dismiss involves a question of law, and, therefore, our review is *de novo* with no presumption of correctness. *Graham v. Caples*, 325 S.W.3d 578, 581 (Tenn. 2010). Whether Plaintiff demonstrated extraordinary cause that would excuse compliance with the notice statute is a mixed question of law and fact, and our review is *de novo* with a presumption of correctness applying only to the trial court's findings of fact and not to the legal effect of those findings. *Starr v. Hill*, 353 S.W.3d 478, 481-82 (Tenn. 2011) (quoting *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292, 305 (Tenn. 2005)). The trial court's decision to excuse compliance is reviewed under an abuse of discretion standard. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012). A court abuses its discretion when it applies an incorrect legal standard, its decision is illogical or unreasonable, its decision is based on a clearly erroneous assessment of the evidence, or the decision uses reasoning that works an injustice on the complaining party. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (quoting *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)).

II.

A.

To decide whether Plaintiff complied with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E), we must first determine whether Plaintiff was required to strictly or substantially comply with this subsection of the statute.[5]

---

[5] The dissent states that addressing "whether the content of the notice met the aggregate requirements of the pre-suit notice statute" frames the issue in a manner that is more consistent with the way the issue has

Tenn. Code Ann. § 29-26-121(a) establishes six separate requirements that serve related yet ultimately distinct goals. First, Tenn. Code Ann. § 29-26-122(a)(1) contains an express notice requirement that requires plaintiffs to give defendants written notice that a potential healthcare liability claim may be forthcoming. In contrast, Tenn. Code Ann. §§ 29-26-122(a)(2)(A)-(C) facilitate early resolution of healthcare liability claims by requiring plaintiffs to advise defendants who the plaintiff is, how to reach him or her, and how to contact his or her attorney. Lastly, the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(D) and Tenn. Code Ann. § 29-26-121(a)(2)(E) serve an investigatory function, equipping defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early discovery of potential co-defendants and early access to a plaintiff's medical records.

The plain language of Tenn. Code Ann. § 29-26-121(a)(2) provides that each of the aforementioned requirements "shall" be included in a plaintiff's written notice to potential defendants. In *Myers*, we held that "[t]o determine whether the use of the word 'shall' in a statute is mandatory or merely directory, we look to see 'whether the prescribed mode of action is of the essence of the thing to be accomplished.'" 382 S.W.3d at 309, citing 3 Norman J. Singer & J.D. Singer, *Statutes and Statutory Construction* § 57:2 (7th ed. 2008), and *Holdredge v. City of Cleveland*, 218 Tenn. 239, 302 S.W.2d 709, 713 (1996). As we explained in *Jones v. Prof'l Motorcycle Escort Serv., L.L.C.*, the touchstone of this analysis is whether a party's procedural error resulted in actual prejudice to an opposing party. 193 S.W.3d 564, 571 (Tenn. 2006) ("failure to conform to technical requirements is not fatal where allowing such amendment does not prejudice the defendant and promotes the interests of justice"). Accordingly, if strict compliance with a particular statutory provision is essential to avoid prejudicing an opposing litigant, the prescribed mode of action will be mandatory. *Id. See also Myers*, 382 S.W.3d at 309 (holding that plaintiffs must strictly comply with 29-26-121(a)(1) because "[w]ithout the notice required by Tennessee Code Annotated section 29-26-121[a][1], the defendants were not apprised that Mr. Myers

---

been presented by the parties. However, the substance of the parties' briefing on the issue makes clear that their dispute concerns the consequences of a plaintiff's failure to comply with Tenn. Code Ann. § 29-26-121(a)(2)(E) only, rather than a plaintiff's failure to comply with Tenn. Code Ann. § 29-26-121(a) as a whole. *See, e.g.,* Br. of Defendant/Appellee Hickman 8 ("HCH submits that the plaintiff's complaint should be dismissed for her failure to comply, strictly or substantially, with Tenn. Code. Ann. § 29-26-121(a)(2)(E)'s requirement that she include in her pre-suit notice a HIPAA compliant authorization allowing the potential defendants to obtain medical records from each other[.]"); Br. of Defendant/Appellant Whitaker 7 ("This Brief is solely concerned with the HIPAA authorization requirement of Tennessee Code Annotated section 29-26-121(a)(2)(E)."); Br. of Plaintiff/Appellee 5-6 ("The only existing dispute between the parties is whether Appellee satisfied T.C.A. section 29-26-121(a)(2)(E) (the 'HIPAA authorization requirement'), and, if not, whether such non-compliance should result in a dismissal of Appellee's claim with prejudice.").

continued to assert a claim against them and that a suit would be filed and were therefore deprived of the notice required by Tennessee Code Annotated Section 29-26-121"); Tenn. Code Ann. § 29-26-122(c) (mandating dismissal with prejudice when a plaintiff has failed to offer proof of a good faith claim prior to bringing defendants into litigation).

Defendants received actual notice of Plaintiff's claim pursuant to Tenn. Code Ann. § 29-26-121(a)(1). But, the purpose of Tenn. Code Ann. § 29-26-121(a)(2)(E) is not to provide defendants with notice of a potential claim. Instead, Tenn. Code Ann. § 29-26-121(a)(2)(E) serves to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records. Because HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records. *See* 45 C.F.R. § 164.508(a)(1) ("a covered entity may not use or disclose protected health information without an authorization that is valid under this section").[6] Tenn. Code Ann. § 29-26-121(d)(1) creates a statutory entitlement to the records governed by § 29-26-121(a)(2)(E). *See* Tenn. Code Ann. § 29-26-121(d)(1) ("All parties in an action covered by this section *shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice* . . . ") (emphasis added). As a result, plaintiffs cannot satisfy Tenn. Code Ann. § 29-26-121(a)(2)(E) by simply notifying defendants that a healthcare liability claim may be forthcoming.

A plaintiff's less-than-perfect compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E), however, should not derail a healthcare liability claim. Non-substantive errors and omissions will not always prejudice defendants by preventing them from obtaining a plaintiff's relevant medical records. Thus, we hold that a plaintiff must substantially comply, rather than strictly comply, with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E).

B.

Next, we must determine whether the medical authorization that Plaintiff provided to Defendants substantially satisfied the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E).

---

[6] The penalties imposed upon covered entities that wrongfully disclose or obtain private health information in violation of HIPAA are also extremely severe, with such entities facing punishment of up to $50,000 per offense and/or imprisonment of up to one year for non-compliance. *See* 42 U.S.C.A. § 1320d-6.

Tenn. Code Ann. § 29-26-121(a)(2)(E) provides that a plaintiff "shall" include in the pre-suit notice a "HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Federal regulations state that a HIPAA compliant authorization must include the following six elements:

(i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.

(ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.

(iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.

(iv) A description of each purpose of the requested use or disclosure. . . .

(v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure. . . .

(vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

45 C.F.R. § 164.508(c)(1).

Plaintiff does not contend that the medical authorization provided to Defendants satisfied each of these six requirements. Plaintiff's counsel conceded in the trial court that Plaintiff's medical authorization actually provided "very little benefit" to Defendants, and that compliance with HIPAA "didn't happen here." We agree. First, and most importantly, by permitting disclosure only to Plaintiff's counsel, Plaintiff's medical authorization failed to satisfy the express requirement of Tenn. Code Ann. § 29-26-121(a)(2)(E) that a plaintiff's medical authorization "permit[] the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Second, Plaintiff's medical authorization failed to satisfy at least three of the six compliance requirements mandated by HIPAA. Specifically, Plaintiff's authorization lacked a description of the medical information to be disclosed, 45 C.F.R. § 164.508(c)(1)(i); failed to state the individuals or organizations authorized to disclose the decedent's medical records, 45 C.F.R. § 164.508(c)(1)(ii); and failed to specify the type of information authorized to be used or disclosed, 45 C.F.R. § 164.508(c)(1)(iv).

-7-

In determining whether a plaintiff has substantially complied with a statutory requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance. Not every non-compliant HIPAA medical authorization will result in prejudice. But in this case, the medical authorization submitted by Plaintiff was woefully deficient. The errors and omissions were numerous and significant. Due to Plaintiff's material non-compliance, Defendants were not authorized to receive any of the Plaintiff's records. As a result of multiple errors, Plaintiff failed to substantially comply with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E).

C.

We next address whether Plaintiff's failure to comply with Tenn. Code Ann. § 29-26-121(a)(2)(E) should be excused for extraordinary cause. As provided in Tenn. Code Ann. § 29-26-121(b), "a court has discretion to excuse compliance with [§ 29-26-121(a)] only for extraordinary cause shown." Plaintiff does not allege any extraordinary reason for her failure to comply with Tenn. Code Ann. § 29-26-121(a)(2)(E). Instead, Plaintiff argues that her failure to comply should be excused for several reasons, including factors not relied upon by the trial court. First, Plaintiff maintains that the requirement that a plaintiff authorize disclosure of his or her complete medical records is preempted by HIPAA. Second, Plaintiff contends that obtaining a HIPAA compliant authorization conflicts with Tennessee's public policy regarding the privacy of individuals' medical information. Third, Plaintiff advances the three arguments that the trial judge found persuasive: that the death of Mr. Stevens was an extraordinary cause, that Plaintiff complied with the spirit of Tenn. Code Ann. § 29-26-121(a)(2)(E) by giving Defendants actual notice, and that Plaintiff filed a certificate of good faith as required by Tenn. Code Ann. § 29-26-122. Lastly, assuming that none of these circumstances qualifies as "extraordinary" for purposes of Tenn. Code Ann. § 29-26-121(b), Plaintiff also argues that Defendants should have informed her of the deficiency of her medical authorization before filing a motion to dismiss. Each of Plaintiff's claims is without merit. We address Plaintiff's arguments in turn.

The question of whether Tenn. Code Ann. § 29-26-121(a)(2)(E) is preempted by federal law is a question of law, which we review *de novo*. *Lake v. Memphis Landsmen, LLC*, 405 S.W.3d 47, 55 (Tenn. 2013) (citing *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010)). The preemption doctrine is rooted in the Supremacy Clause of the United States Constitution, and applies when a state law is contrary to or interferes with federal law.[7] U.S. Const. art. VI, cl. 2.

_____

[7] The Supremacy Clause provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the

Preemption may be either express or implied. Express preemption occurs when Congress makes it explicitly clear in its statutory language that federal law preempts state law. *Leggett*, 308 S.W.3d at 853. Implied preemption occurs when the scheme of federal regulation occupies the field, when individuals or entities cannot comply with both federal and state law, or when state law impedes or frustrates federal objectives. *Id.* at 853-54. We have referred to these three types of implied preemption as field preemption, direct conflict preemption, and "purposes and objectives" conflict preemption. *Id*.

Plaintiff asserts that § 29-26-121(a)(2)(E)'s pre-suit HIPAA authorization requirement is expressly preempted by HIPAA, and that requiring that plaintiffs turn over their private medical records as a pre-condition of bringing suit impliedly frustrates HIPAA's purposes and objectives. We disagree. HIPAA expressly provides for the preemption of state laws that are contrary to its provisions unless those state laws are more stringent in their privacy protections. 45 C.F.R. § 160.203(b) (2013). However, HIPAA defines a "contrary" state law as either: (1) a law that creates an environment in which it would be "impossible to comply with both the State and Federal requirements," or (2) a law that "stands as an obstacle to the accomplishment and execution" of HIPAA's full purposes and objectives. 45 C.F.R. § 160.202(1) (2013). Tenn. Code Ann. § 29-26-121(a)(2)(E) authorizes disclosures that are expressly contemplated by HIPAA. *See* 45 C.F.R. § 164.508. Additionally, although Tenn. Code Ann. § 29-26-121(a)(2)(E) requires that a plaintiff complete a HIPAA authorization as a pre-condition of filing suit, a plaintiff's decision whether to file suit is still a voluntary one. *See In re Collins*, 286 S.W.3d 911, 920 (Tex. 2009) ("[W]hile it is true that [plaintiffs] could not have proceeded with their suit if [plaintiffs] had not executed the authorization, it was their choice to file the suit."). Thus, complying with Tenn. Code Ann. § 29-26-121(a)(2)(E) neither conflicts with HIPAA nor stands as an obstacle to the accomplishment of HIPAA's full purposes and objectives. As such, Tenn. Code Ann. § 29-26-121(a)(2)(E) is not "contrary" to HIPAA within the meaning of 45 C.F.R. § 160.202(1), and it is not preempted. *Id*.

Plaintiff next asserts that Tenn. Code Ann. § 29-26-121(a)(2)(E) violates Tennessee's implied covenant of confidentiality in medical care contracts between treating physicians and their patients. This Court has recognized an implied covenant of confidentiality and the importance of keeping a patient's medical records confidential. *Alsip v. Johnson City Med. Ctr.*, 197 S.W.3d 722, 725-26 (Tenn. 2008); *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 407-08 (Tenn. 2002). However, in *Alsip*, we acknowledged that "public policy considerations reflected in the Tennessee Rules of Civil Procedure require that the covenant of physician-patient confidentiality be voided for purposes of discovery." 197

United States, shall be the supreme Law of the land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or laws of any state to the Contrary notwithstanding."

S.W.3d at 726. Healthcare liability defendants have a right to receive medical records to defend themselves against civil liability. *Givens*, 75 S.W.3d at 408; Tenn. R. Civ. P. 26.02 (providing that parties can obtain a wide range of materials if they are "relevant to the subject matter involved in the pending action"). By filing a healthcare liability lawsuit in Tennessee, a plaintiff impliedly consents to the discovery of relevant medical information. *Alsip*, 197 S.W.3d at 727. The implied covenant of confidentiality also does not prohibit a healthcare provider from disclosing a patient's medical records upon a court order. *See, e.g., Givens*, 75 S.W.3d at 408. We may presume that the General Assembly was aware of both HIPAA regulations and our precedents addressing the implied covenant of confidentiality between doctor and patient when it enacted Tenn. Code Ann. § 29-26-121(a)(2)(E). *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010). Because Tenn. Code Ann. § 29-26-121(a)(2)(E) is not inconsistent with Tennessee law regarding the implied covenant of confidentiality in doctor-patient relationships, this implied covenant does not excuse Plaintiff's failure to comply with the statutory requirement.

Plaintiff further contends that Tenn. Code Ann. § 29-26-121(a)(2)(E) violates a patient's implied covenant of confidentiality because it provides for the release of a plaintiff's "complete medical records." We conclude, however, that the intended meaning of the phrase "complete medical records," as used in § 29-26-121(a)(2)(E), was not to grant defendants access to a plaintiff's entire medical history. Instead, we believe that the purpose of this requirement is to afford defendants access to all medical records that are relevant to the particular claim at issue. In determining whether medical records are relevant for purposes of litigation, defendants should continue to adhere to the "minimum necessary" standard that traditionally applies to a provider's use and disclosure of a patient's private health records under 45 C.F.R. § 164.502(b)(1): "When using or disclosing protected health information or when requesting protected health information from another covered entity or business associate, a covered entity or business associate must make reasonable efforts to limit protected health information to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request."

We now address the grounds relied on by the trial court that Plaintiff's failure to comply with Tenn. Code Ann. § 29-26-121(a)(2)(E) constituted extraordinary cause. The first of these grounds is that Mr. Stevens—the alleged victim of Defendants' professional negligence—died before Plaintiff's lawsuit was filed. Although Mr. Stevens' death might have been unexpected, his death does not constitute extraordinary cause. While Mr. Stevens obviously could not sign the HIPAA medical authorization after his own death, the death of a decedent will necessarily be involved in every wrongful death claim, and his personal representative could easily have complied with this requirement in his stead. *See* Tenn. Code Ann. § 63-2-101(b)(3) (2010) ("If the patient becomes incapacitated or dies, and there is no legal representative for the patient, the patient's next of kin will be considered to be an

authorized representative for the patient."); 45 C.F.R. § 164.502(g)(4) ("If under applicable law an executor, administrator, or other person has authority to act on behalf of a deceased individual or of the individual's estate, a covered entity must treat such person as a personal representative under this subchapter."). Because Mr. Stevens' death did not prevent his personal representative from complying with the pre-suit notice requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E), Mr. Stevens' death did not constitute the extraordinary cause necessary to excuse Plaintiff's failure to comply.

The second and third factors cited by the trial court were that Defendants received actual notice of the lawsuit, and that Plaintiff complied with Tenn. Code Ann. § 29-26-122's requirement that she file a certificate of good faith. Although Plaintiff gave Defendants actual notice of her claim and also filed a certificate of good faith as required by Tenn. Code Ann. § 29-26-122, these facts do not excuse Plaintiff's failure to comply with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E). As we explained previously, in contrast to the requirements of § 29-26-121(a)(1), the purpose of § 29-26-121(a)(2)(E) is not to provide actual notice to defendants. We also cannot render Tenn. Code Ann. § 29-26-121(a)(2)(E) superfluous by excusing performance whenever a certificate of good faith is filed in accordance with Tenn. Code Ann. § 29-26-122. Accordingly, Plaintiff's failure to provide Defendants with the HIPAA compliant medical authorization required by Tenn. Code Ann. § 29-26-121(a)(2)(E) cannot be excused by Plaintiff's acts of furnishing Defendants with notice of a potential claim or filing a certificate of good faith.

Lastly, Plaintiff argues that her failure to comply with Tenn. Code Ann. § 29-26-121(a)(2)(E) should be excused because Defendants did not inform her that her medical authorization was deficient before filing a motion to dismiss. Plaintiff cites no authority to support this proposition, and we have found none. Plaintiff—not Defendants—was responsible for complying with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E).

For the foregoing reasons, we hold that the trial court abused its discretion when it excused Plaintiff's failure to comply with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E) in the absence of extraordinary cause.

D.

We now address the consequences of Plaintiff's failure to comply with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E). The text of Tenn. Code Ann. § 29-26-121 provides no explicit penalty or consequence for failing to provide pre-suit notice. This omission is significant in light of the express remedial language contained in Tenn. Code Ann. § 29-26-122(c), which states that: "The failure of a plaintiff to file a

certificate of good faith in compliance with this section shall, upon motion, make the action subject to dismissal with prejudice."

Moreover, this Court has also adopted a general rule that trial courts should be "reluctant to give effect to rules of procedure which seem harsh and unfair, and which prevent a litigant from having a claim adjudicated upon its merits." *Childress v. Bennett*, 816 S.W.2d 314, 316 (Tenn. 1991). *See also Tennessee Dep't of Human Servs. v. Barbee*, 689 S.W.2d 863, 866 (Tenn. 1985).

Because Tenn. Code Ann. §§ 29-26-121 and -122 were enacted together as part of the Tennessee Health Care Liability Act, the doctrine of *in pari materia* requires us to interpret these two sections together. *See Myers*, 382 S.W.3d at 311; *Graham*, 325 S.W.3d at 581-82; *Coleman v. Acuff*, 569 S.W.2d 459, 461 (Tenn. 1978). Although legislative silence is not generally indicative of an intent not to act, *see House v. Estate of Edmondson*, 245 S.W.3d 372, 387 (Tenn. 2008), legislative silence in this particular context offers a strong suggestion that the legislature intended Tenn. Code Ann. §§ 29-26-121 and -122 to function differently. If the legislature had intended to punish a plaintiff's failure to comply with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E) by requiring courts to dismiss all such cases with prejudice, the legislature could easily have done so, as it did in Tenn. Code Ann. § 29-26-122. Thus, we can only interpret the legislature's failure to mandate the same remedy for Tenn. Code Ann. § 29-26-121(a)(2)(E) violations as an indication that dismissal with prejudice for such violations is not compulsory. *State v. Harkins*, 811 S.W.2d 79, 92 (Tenn. 1991) ("[I]t is a rule of statutory construction which is well recognized by our courts, that the mention of one subject in a statute means the exclusion of other subjects that are not mentioned."); *Southern v. Beeler*, 195 S.W.2d 857, 866 (Tenn. 1946) (same). We reaffirm our general presumption against dismissing cases with prejudice on procedural grounds, and dismiss Plaintiff's case without prejudice.

Defendant argues that even if Plaintiff's claim is dismissed without prejudice, dismissing Plaintiff's claim in this case would effectively operate as a dismissal with prejudice because Plaintiff's claim would be time-barred. *See, e.g., Putnam v. Morris*, 833 F.2d 903, 904-05 (10th Cir. 1987) ("Dismissal for failure to serve within the time period is without prejudice. It may, however, operate as a dismissal with prejudice when the action will be time-barred."). The trial court did not reach this issue and, accordingly, we decline to address it.

III.

In summary, Plaintiff failed to substantially comply with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E), and her noncompliance was not excused by extraordinary

cause. The judgment of the trial court is reversed and Plaintiff's claim is dismissed without prejudice. Costs of this appeal are taxed to Plaintiff Christine Stevens and her surety, for which execution may issue if necessary.


_____

SHARON G. LEE, JUSTICE